(No. 23914.—

EDITH C. LINDQUIST *et al.* Appellees, *vs.* FRIEDMAN'S, INC. *et al.* Appellants.

*Opinion filed April 16, 1937—Rehearing denied June 2, 1937.*

Jones and Wilson, JJ., dissenting.

Max M. & Samuel Grossman, (Sid Mogul, of counsel,) for appellants.

Schofield & Wood, (Frank Schofield, and David H. Kraft, of counsel,) for appellees.

Mr. Justice Farthing delivered the opinion of the court:

Edith C. Lindquist and Agnes Lindstrom, the appellees, sued the appellants in the superior court of Cook county for damages for false arrest and imprisonment. Each of them obtained a verdict for $1000. Each of them remitted $250 and two judgments were rendered, each for $750. The Appellate Court for the First District affirmed the judgments and issued a certificate of importance which is the basis of this appeal.

Edith C. Lindquist had been employed by the United States government in the internal revenue office in Chicago, but was not working at the time of the alleged imprisonment. She, her brother and their niece, Agnes Lindstrom, a stenographer employed by the Fleishman Transportation Company, lived five or six blocks from the appellants' store in Chicago. Agnes Lindstrom had been a customer of this company for about fourteen years and had a nodding acquaintance with the appellant Maurice Friedman, the president of the Friedman's Inc. Appellees went to the store on March 24, 1934, shortly after three o'clock in the afternoon. They paid $2 for some silk at one counter and

had made a $3.74 purchase at another, whereupon Agnes Lindstrom tendered a five-dollar bill which, upon examination, the clerk pronounced a counterfeit. The clerk took this bill to the cashier and to Maurice Friedman, who came over to where appellees were. He told them the bill was counterfeit, that he had notified the police and that appellees would have to wait there until the officers came. Two officers in uniform arrived ten or fifteen minutes later and were conducted to the counter where appellees were still standing. Meantime Agnes Lindstrom had paid the $3.74 to the clerk. After a few questions the officers took appellees to Friedman's office in the rear of the store, where appellees were questioned further and were told that they would have to go to the police station. The officers then took them to the police station in a squad car. Friedman went to the station in his own automobile. At the station the officers interrogated appellees further and notified the Federal office in charge of investigating counterfeiting. They also informed Miss Lindstrom's employer that she was being held at the police station charged with passing a counterfeit bill. Shortly after, two Federal investigators came and after talking with appellees, released them.

Agnes Lindstrom testified that about ten days earlier she had deposited part of her salary in the Harris Trust and Savings Bank, and that she had about $20 in her purse when she went to appellants' store on March 24, 1934. After telling the facts, above related, concerning the two purchases, she said appellant Maurice Friedman came over to her, with the five-dollar bill in his hand and said, "I have called the police. You will have to wait here." She said Friedman stood near the appellees until the two officers came and that there were several customers in the store during this time. She told of their all going back to Friedman's office, of being questioned by the officers as to where she and her aunt lived and where they were employed, and that Friedman said they would have to go with the officers to

the police station. The officers also said appellees must go to the station and talk to the lieutenant. Appellee Lindstrom asked Friedman if they would go in his car or with the officers and he replied that they would have to go with the officers. She told of being questioned at the station by the police lieutenant, the calling of the Federal officers and her employer and of being finally permitted to go home. The testimony of Edith C. Lindquist, was similar to that of Miss Lindstrom. Both testified that they were greatly embarrassed at the time and were made nervous for a considerable time thereafter.

Appellants' witness, Irene Gutch, testified that she was the clerk who waited on Miss Lindstrom. She stated that Mr. Friedman came over to the counter and said to Miss Lindstrom, "I am sorry, madam, but we cannot accept this bill, because it is a counterfeit. The only thing we can do is turn it over to the authorities." He then told another employee to call the police and walked away from appellees. Appellees stood at the counter until the police came about ten minutes later. Mr. Friedman then suggested that they all go into his office. This witness stated that she was not employed by defendants at the time of the trial, and was not acquainted with appellees, although she had worked in the store for about three years.

Appellants' witness, Thomas Cleary, one of the police officers, recounted the circumstances already set out surrounding the arrest and detention of appellees and stated that one of the appellees told him she got the bill at the Continental Bank, but that she could have received it at a millinery store where she had bought a hat. He said they took appellees into Friedman's private office because customers in the store wanted to listen to the conversation.

The testimony of other witnesses is substantially the same as that detailed above. Appellees are conceded to be law-abiding citizens and no wrongful intent is imputed to them in connection with the passing of the spurious bill.

We cannot agree with appellants in their contention that appellees were not falsely arrested and imprisoned by or at the instigation of appellants. In our State a citizen is not permitted to take the law into his own hands and to arrest another upon suspicion or even upon probable cause. Where a citizen has knowledge that a crime has been committed it is his duty to make a complaint before a magistrate and in his complaint he should state that the particular crime has been committed and he may state, on information and belief, that the person named is the offender. The magistrate thereupon issues his warrant for the arrest of the accused. That course affords protection to the person making complaint, the arresting officer and the person arrested. To permit a private citizen, without observing the formal requirements enumerated, to become a self-constituted officer and jailer upon mere suspicion of the guilt of the accused person, or even upon probable cause to believe such person guilty, would result in more and greater evils than the possible escape of the few guilty persons occasioned by delay in obtaining warrants and officers to serve them. (*Enright* v. *Gibson,* 219 Ill. 550, 554; *Dodds* v. *Board,* 43 id. 95.) It is not necessary in a false imprisonment case to prove that the defendant used physical violence or laid hands on the plaintiff, but it is sufficient to show that at any time or place the defendant in any manner restrained the plaintiff of his liberty without sufficient legal authority. (*People* v. *McGurn,* 341 Ill. 632; *People* v. *Scalisi,* 324 id. 131; *Hawk* v. *Ridgway,* 33 id. 473; 1 Cooley on Torts, (4th ed.) sec. 109.) Although there is some contrariety in the testimony as to the details of what took place on the day in question in the Friedman's, Inc. department store, there is evidence to sustain and to support the finding of the jury that appellees were the victims of false arrest and imprisonment. We are not warranted, therefore, in disturbing the verdict of the jury, and the finding of the trial and Appellate courts. This contention must be overruled.

Neither can we sustain the contention of appellants that testimony as to what happened at the police station outside their presence was improperly received in evidence. The appellees had a right to show what happened there as a part of their proof of the damages they suffered. *Kindred* v. *Stitt*, 51 Ill. 401; 4 Sutherland on Damages, (4th ed.) sec. 1257; 11 R. C. L. p. 820.

The trial court refused to strike a part of an answer to a question asked of Agnes Lindstrom. However, succeeding questions and answers covered the objectionable part of her answer, and, although the court should have ordered the unresponsive part stricken, the words, "It upset me something terrible because I had never had such a humiliating experience in my life before," cannot be said to be so prejudicial as to require a reversal of the judgments.

The appellants contend that the damages are excessive and that punitive or exemplary damages were not recoverable in this case. A plaintiff need not prove malice as an essential element of the charge of false imprisonment, for the existence of malice is not a prerequisite to his cause of action. A defendant has a right to show the absence of malice in order to mitigate the damages, but if the wrongful act is shown to have been done either wantonly, wilfully, maliciously or oppressively, punitive damages may be assessed. (*Roth* v. *Smith*, 54 Ill. 431, 11 R. C. L. p. 794.) If wantonness, wilfulness or oppression are lacking, only actual damages can be recovered. (*Roth* v. *Smith, supra; Beckwith* v. *Bean*, 98 U. S. 266.) The question of malice is one of fact for the jury. The only proper inquiry for this court is: Was there any evidence to warrant the jury in assessing punitive damages? Without inquiry of any sort, Maurice Friedman, president of Friedman's, Inc., detained the appellees, called the police and caused appellees to be taken to the police station. It is admitted appellees were innocent of any wrongful intent, and the testimony shows that this bill would deceive the average person.

The jury was warranted in finding that the conduct of Friedman showed a wanton disregard of the rights of appellees. The contention that the testimony did not warrant the jury in assessing punitive damages is overruled.

There are two answers to the claim that it was error to instruct the jury on the subject of punitive damages. One is that the evidence warranted the allowance of punitive damages, and the other is, that the court gave an instruction on that subject at the appellants' request. Both appellants and appellees were of the opinion that the question of the allowance of such damages was involved in this case, for both sides requested and obtained such instructions. A party litigant cannot demand that the court rule on a particular subject and then be heard to complain that the court had no right at all to rule on that branch of the case. He may, of course, challenge the correctness of the finding of the jury on the question of fact submitted to it by the instructions, but he cannot be heard to say that it was error for the court to comply with his own request in submitting the particular question to the jury. (*Illinois Central Railroad Co.* v. *Latimer,* 128 Ill. 163; *Chicago and Alton Railroad Co.* v. *Harbur,* 180 id. 394.) The following is contained in the instructions asked by appellants:

"The court instructs the jury that you have the right to consider whether or not the defendants, or either of them, acted in good faith, with honest intentions and with prudence and proper caution, and if you so find from the evidence, then you cannot assess punitive or exemplary damages against the defendants, or either of them."

This given instruction shows that appellants conceded that the question of exemplary damages was involved in the case. This contention is, therefore, overruled.

There is no error of sufficient gravity to warrant the reversal of these judgments and they are, accordingly, affirmed.

*Judgments affirmed.*

Mr. Justice Wilson, dissenting:

I am unable to concur in the foregoing opinion. Plaintiffs entered the store of defendants and presented a spurious five dollar bill in payment for goods received. Every essential visible element of passing counterfeit money was present and the only thing lacking was intent. Naturally, one passing a counterfeit bill would not admit that he knew it was not genuine. The facts justified the defendants in detaining plaintiffs for the purpose of making a further examination. There was probable cause present. Under the circumstances, while defendants may have been guilty of false imprisonment in so far as the intention of the plaintiffs is concerned, there certainly was, in my opinion, a total lack of malice. The plaintiffs were unknown to the defendants and there could be no reason, other than a justifiable one, in attempting to discover all the facts concerning the transaction.

An instruction was given by the court authorizing the jury to assess punitive damages. Counsel objected, in so far as he was able, before the giving of this instruction and when the court intimated that it would give the instruction, the defendants were authorized, without waiving their rights, to offer another instruction on their own behalf on this question. The question of malice is not one of fact for the jury but is a question of law for the court, and before such an instruction should be given authorizing the jury to assess punitive damages, the court first should determine as a matter of law, whether or not it is a case which authorizes the assessment of punitive damages. *Eshelman* v. *Rawalt,* 298 Ill. 192, 198; *Beckwith* v. *Bean,* 98 U. S. 266.

In my opinion the giving of the instruction on behalf of the plaintiffs referred to was error and the only damages, if any, to which the plaintiffs were entitled, would be actual damages growing out of the arrest.

Mr. Justice Jones, also dissenting.