EDWARD F. DUTTON, Plaintiff-Appellee, *v.* ROO-MAC, INC., Defendant-Appellant.

Second District   No. 80-631

Opinion filed September 15, 1981.—Rehearing denied October 19, 1981.

Bradley Prendergast and Dale L. Smirl, both of Chicago, for appellant.

Frank Wesolowski, Jr., of Wheaton, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

As a result of two incidents which occurred in the defendant's restaurant on March 18 and March 21, 1978, the plaintiff in the present case was charged with criminal trespass to land. On July 10, 1980, the trial court dismissed the criminal complaint with prejudice over the State's objection, apparently because the State was not ready for trial due to the absence of a necessary witness. Subsequent to the dismissal of the criminal case, the plaintiff, acting *pro se*, brought the present civil action in small claims court for false imprisonment and malicious prosecution against the defendant, Roo-Mac, Inc., and two of its employees, Brenda Vilendrer and Ramona Condie.

After a bench trial in which the court denied the defendant's motion for a directed verdict, the trial court found that the plaintiff had not proved his action for malicious prosecution, but that he had established, by a slight preponderance of the evidence, that the defendant, Roo-Mac, Inc., had falsely imprisoned him. Judgment for $500 and costs was entered against the defendant and in favor of the plaintiff on his action for false imprisonment. The defendant, Roo-Mac, Inc., appeals. Neither Ms.

Vilendrer nor Ms. Condie is a party to this appeal, and the record is silent concerning what action, if any, was taken against them below.

The incidents which form the basis for both the criminal complaint and the present suit occurred in the defendant's restaurant on March 18 and March 21, 1978. Ramona Condie, the restaurant's assistant manager, related that she was working in the restaurant on the evening of March 18 when she noticed a disturbance. She stated that a group of youths, which included the plaintiff, was being noisy and messy and that the youths were walking and sitting on the tables. On cross-examination, however, she conceded that she had not seen the plaintiff walk on a table or destroy any property but had only observed him with his feet on the table. Ms. Condie directed Brenda Vilendrer, another of the restaurant's assistant managers, to tell the youths to leave. When they did not depart, Condie directed Vilendrer to call the police and warn the group to leave immediately as well as to inform them that they would be arrested if they returned to the restaurant. After calling the police, Vilendrer went over to the group. Vilendrer did not testify and there is no evidence as to what, if anything, she told the group.

Ms. Condie related that as the group was leaving, she observed the plaintiff, who was lagging behind the others, and told him never to return to the restaurant or she would have him arrested. She said that the plaintiff did not respond, but their eyes met and he made a face at her. She further testified that the police arrived shortly after the youths had left, that she gave them a description of the car in which the group had departed, and that she told a police officer she would not file charges against the individuals this time but would do so if they returned in the future. Ms. Condie further testified the next time she saw the plaintiff was on March 21, 1978, when he was standing in line at the counter waiting to be served. On that occasion he was wearing a red jacket and she immediately called the police.

Ms. Condie also related that earlier that week the management at the defendant's restaurant had held a meeting regarding disruptive youths who had been frequenting the restaurant. At that meeting the management formulated a new policy which established that the police would be called when an individual returned to the restaurant after having been warned previously that he was prohibited from entering the premises in the future. Her motive in calling the police on March 21 was to implement the restaurant's policy.

On cross-examination, Ms. Condie stated that other than her contact with the plaintiff at the restaurant, she had seen the plaintiff at his high school where she student-taught for a short period of time and that she remembered the plaintiff as he was on the football team.

On rebuttal, the plaintiff took the witness stand and testified that he never owned a red jacket and that he had never been on the high school football team.

Officer Lilly of the Glen Ellyn police department testified that he received a report of a disturbance at the defendant's restaurant on March 18 and a description of the vehicle in which the persons who were allegedly creating the disturbance had left. Three hours after the incident, he spotted the vehicle in question. The plaintiff was one of the youths in the car. The officer warned all of the car's occupants that they were not to patronize the defendant's restaurant in the future and that they would be arrested upon returning to the premises. On cross-examination, Officer Lilly stated that it was possible but not probable that the plaintiff was standing outside the car and separated from the rest of the vehicle's occupants when the warning was given. Lilly and two fellow officers arrested the plaintiff on March 21 at the defendant's restaurant.

Officer Steele recounted that when he arrived at the restaurant on March 21, Ms. Condie apprised him of the past warning that had been given to the plaintiff. He asked the plaintiff to step outside the restaurant; he then arrested him for criminal trespass to land and transported him to the police station. According to the officer, the plaintiff remained at the station for approximately 1½ hours during which time he underwent the normal processing procedures of fingerprinting and photographing. While the plaintiff was at the station, Ms. Vilendrer signed a criminal complaint against him for trespass to land.

The plaintiff testified that, while he was waiting to be served in the defendant's restaurant on March 21, a Glen Ellyn policeman announced that he was under arrest and asked him to step outside. He was arrested, handcuffed, and taken to the police station where he spent a few hours. He denied that either Ms. Vilendrer or Ms. Condie had asked him on several occasions to leave the restaurant or had warned him that he would be subject to arrest if he returned to the eating establishment. While the plaintiff admitted he had been present at the restaurant on the evening of March 18, he maintained that he had not been requested to leave or warned that he would be arrested if he entered the premises in the future. He also denied that the police had given him the same warning later that evening.

Gregory Baird, a friend of the plaintiff who accompanied him to the restaurant on March 21, testified that the Glen Ellyn police arrested the plaintiff while he was in line waiting to be served. The plaintiff was not asked to leave or warned of possible arrest at this time. Baird further related at that time he had visited the restaurant on March 18 with a group of friends, including the plaintiff; while Baird was outside conversing with a friend, a restaurant employee talked with the rest of the group

inside the restaurant, and someone from the group told him that the employee had requested that the group leave the restaurant.

On appeal, the defendant asserts that the trial court erred in entering judgment against it for false imprisonment. The thrust of the defendant's argument on review is that it had reasonable grounds to believe that the plaintiff was committing the offense of criminal trespass to land (Ill. Rev. Stat. 1977, ch. 38, par. 21—3) on March 21, 1978, and that such reasonable belief by a private person under the arrest statute (Ill. Rev. Stat. 1977, ch. 38, par. 107—3) insulates that person from civil prosecution for false imprisonment, because an arrest protected by statute cannot be grounds for civil liability. The defendant asks this court to reverse the cause and remand it with directions that the trial court examine the reasonableness of the defendant's belief that the plaintiff was committing a crime at the time the defendant had him arrested. On the other hand, the plaintiff maintains that the trial court's findings are presumed correct and its judgment should not be disturbed on review given both the conflicting evidence in this cause and the fact that the findings and decision are not against the manifest weight of the evidence.

The plaintiff's amended complaint alleges that the defendant had falsely imprisoned him as a result of the plaintiff's unlawful arrest for criminal trespass to land. It has been stated that a person who has been falsely arrested is at the same time falsely imprisoned, and an unlawful arrest may support a cause of action for either false arrest or false imprisonment. (32 Am. Jur. 2d *False Imprisonment* §2 (1967).) In Illinois, false arrest is one means of committing false imprisonment. *Montgomery v. Harms* (1953), 349 Ill. App. 245, 250; *Shelton v. Barry* (1946), 328 Ill. App. 497, 506.

The relevant legal principles governing the law of false imprisonment are well established. False imprisonment consists of an unlawful restraint, against his will, of an individual's personal liberty or freedom of locomotion. (*Marcus v. Liebman* (1978), 59 Ill. App. 3d 337, 339; *Shelton v. Barry* (1946), 328 Ill. App. 497, 506.) An arrest by an officer caused or procured by a private person is the same as an arrest by the private person. (*Karow v. Student Inns, Inc.* (1976), 43 Ill. App. 3d 878, 881; *Green v. No. 35 Check Exchange, Inc.* (1966), 77 Ill. App. 2d 25, 32; *Aldridge v. Fox* (1952), 348 Ill. App. 96, 100; see *Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 117.) Where the arresting officer relies solely on the information which the defendant's employee gave him in making the arrest, the private party defendant may be held liable for false imprisonment. (*Odorizzi v. A.O. Smith Corp.* (7th Cir. 1971), 452 F.2d 229, 231; *Green v. No. 35 Check Exchange, Inc.* (1966), 77 Ill. App. 2d 25, 31-32.) However, the mere act of giving information to the police is insufficient in itself to constitute participation in an arrest. (*Odorizzi v.*

*A.O. Smith Corp.,* citing *Shelton v. Barry; Karow v. Student Inns, Inc.)* It has also been determined that where an employee, acting for himself and on behalf of his employer, causes the unwarranted arrest of a third person, a single wrongful act is committed, and the defendant employer is liable for false imprisonment as a result of the acts of its agent. *Green v. No. 35 Check Exchange, Inc.* (1966), 77 Ill. App. 2d 25, 32, citing *Aldridge v. Fox* (1952), 348 Ill. App. 96, 102.

It was once the law in this State that a private person who arrested or caused an officer to arrest an individual without a warrant was liable for *false imprisonment* if he could not prove both that a crime was committed in his presence and that the plaintiff was guilty of the crime. (*Enright v. Gibson* (1906), 219 Ill. 550, 555-56, citing *Dodds v. Board* (1867), 43 Ill. 95, 98; *Lindquist v. Friedman's, Inc.* (1936), 285 Ill. App. 71, 79, *aff'd* (1937), 366 Ill. 232.) Under the prior case law, a private citizen could not make an arrest or cause an officer to arrest a person where the citizen had probable cause or reasonable grounds to believe that an offense was being committed. (*Lindquist v. Friedman's, Inc.* (1937), 366 Ill. 232, 236, *aff'g Lindquist v. Friedman's, Inc.* (1936), 285 Ill. App. 71, 78; *Enright v. Gibson* (1906), 219 Ill. 550, 554; *Green v. No. 35 Check Exchange, Inc.* (1966), 77 Ill. App. 2d 25, 29.) The current law, however, which is identical to the law in existence at the time of the occurrence in question, permits a private individual to arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed. (Ill. Rev. Stat. 1979, ch. 38, par. 107—3; *Karow v. Student Inns, Inc.* (1976), 43 Ill. App. 3d 878, 882.) Consequently, it follows that an arrest authorized by statute cannot be grounds for civil liability. (*Karow.*) Thus, the plaintiff has the burden of proving a restraint caused or procured by the defendant without the defendant having reasonable grounds to believe the plaintiff was committing an offense. See *Karow; Fort v. Smith* (1980), 85 Ill. App. 3d 479, 484 (dissent).

In the present case both parties agree that the plaintiff's personal liberty or freedom of locomotion was restrained. The evidence here also establishes that the defendant, acting through its agents, caused or instigated the police to make a warrantless arrest of the plaintiff.

The crucial question on this appeal is whether the restraint of the plaintiff was lawful. In attempting to justify its conduct, the defendant argues that it had reasonable grounds to believe that plaintiff was committing criminal trespass to land when he returned to the restaurant on March 21, 1978. The statute in question defines criminal trespass, in part, as:

> "(a) Whoever enters upon the land or any part thereof of another, after receiving, immediately prior to such entry, notice from the

owner or occupant that such entry is forbidden, or remains upon the land of another after receiving notice from the owner or occupant to depart, commits a Class C misdemeanor.

(b) A person has received notice from the owner or occupant within the meaning of Subsection (a) if he has been notified personally, either orally or in writing, or if a printed or written notice forbidding such entry has been conspicuously posted or exhibited at the main entrance to such land or the forbidden part thereof." (Ill. Rev. Stat. 1977, ch. 38, par. 21—3(a), (b).)

In support of its position, the defendant asserts that Ms. Condie gave the plaintiff the notice required by the trespass statute on March 18, 1978, three days before he was arrested upon returning to the restaurant, that she had reasonable grounds to believe the plaintiff received the notice when he made a face at her after she had warned him that he would be arrested if he returned to the premises, and that she reasonably believed that the plaintiff was committing criminal trespass when he returned on March 21.

In a criminal prosecution for the offense of criminal trespass to land (Ill. Rev. Stat. 1977, ch. 38, par. 21—3), it is not sufficient that the defendant was given notice; the evidence must also establish that he personally believed that notice had been given. (*People v. Ulatowski* (1977), 54 Ill. App. 3d 893, 898.) On the other hand, however, the arrest statute (Ill. Rev. Stat. 1977, ch. 38, par. 107—3) focuses on whether the private person making or causing the arrest had reasonable grounds to do so. In a civil prosecution for false imprisonment, where the defendant relies on the criminal trespass statute to justify its conduct in causing the plaintiff's arrest, the defendant need only establish that it had reasonable grounds to believe that the plaintiff received the notice, rather than that the plaintiff believed such notice had been given.

Defendant's case, however, depends on the court's acceptance of Ms. Condie's testimony that she gave notice to the plaintiff on March 18 that he would be arrested if he returned. Absent any such notice, Ms. Condie could not have had any reasonable belief that notice had been given. The plaintiff's testimony vehemently denied that Ms. Condie or anyone else had given him such notice. Further, Ms. Condie's ability to identify the plaintiff was based in part on the fact that she knew him as a football player. The plaintiff denied that he had been a football player. Other examples of conflicting testimony are also in the record.

This case resolves itself, therefore, into a question of the credibility of the witnesses. The trial court's finding that the plaintiff had proved his case for false imprisonment by a preponderance of the evidence carries with it an implicit finding that the plaintiff had proved all essential elements of his case, including the element that the defendant did not

have reasonable grounds to believe that the plaintiff had received notice not to return under threat of arrest. There was competent evidence to support the versions of both parties, but the court apparently chose to accept that of plaintiff.

It is well established that where, as here, the testimony adduced at trial conflicted and was contradictory, the trial judge, as trier of fact, was in a superior position to hear and weigh the evidence and determine the credibility of the witnesses. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356; *Telander v. Posejpal* (1981), 94 Ill. App. 3d 616, 619.) Furthermore, a court of review will not reverse a judgment unless the findings are clearly and palpably against the manifest weight of the evidence. (*Schulenberg.*) For a finding or judgment to be against the manifest weight of the evidence an opposite conclusion must be clearly evident. *Telander v. Posejpal* (1981), 94 Ill. App. 3d 616, 621, and cases cited therein.

The trial judge heard the evidence and obviously believed the version given by the plaintiff rather than the defendant's witnesses, and we cannot say that the judgment of the trial court is against the manifest weight of the evidence. Therefore, the judgment of the trial court is affirmed.

Affirmed.

NASH and LINDBERG, JJ., concur.