C. HUTCHINSON & COMPANY, Plaintiff-Counterdefendant-Appellant, *v.*
E. W. LANCASTER, INC., Defendant-Counterplaintiff-Appellee.

First District (1st Division)   No. 82—1795

Opinion filed November 21, 1983.

Joseph E. Fitzgerald, of Clarendon Hills (J. Scott Bonner, of counsel), for appellant.

John M. Burke, of Chicago, for appellee.

JUSTICE McGLOON delivered the opinion of the court:

Plaintiff, C. Hutchinson & Company (Hutchinson), brought a breach of contract action against defendant E. W. Lancaster, Inc. (Lancaster). Defendant filed a counterclaim alleging nonpayment of contract. Following a bench trial, judgment was entered in favor of defendant on the complaint. Judgment was also entered in favor of

defendant on its counterclaim in the amount of $16,787.50.

On appeal, plaintiff contends that (1) the trial court's finding that the design of a pretying machine was the joint responsibility of the parties was against the manifest weight of the evidence; (2) the trial court's finding that defendant performed all conditions required under the contract was against the manifest weight of the evidence; and (3) the trial court's award of damages to defendant was erroneous as a matter of law.

We affirm, as modified.

In 1976, plaintiff was in the business of pretying sausage casings for meatpackers. Plaintiff's customers would send sausage casings to plaintiff. Plaintiff would, in turn, tie the end of the casings and return them to the meatpackers for filling. In an attempt to obtain a machine that would tie casings at a greater speed with lower labor costs, plaintiff contacted defendant, a custom-equipment builder.

In early 1977, representatives of the parties met to discuss the feasibility of designing and building a prototype of a machine that would meet plaintiff's needs. Those present at the meetings were Jack Lancaster (president of E. W. Lancaster, Inc.), Bogdan Wezio (superintendent of E. W. Lancaster), and Jack Hutchinson (president of C. Hutchinson & Company). Wezio presented sketches to Hutchinson which demonstrated how a machine could be built that would complete the following functions: (1) picking up a casing; (2) pleating or gathering the casing's end; and (3) tying or clipping the casing. Wezio testified that it was his understanding that defendant agreed to build a machine that would be capable of performing these functions. He further testified that Mr. Hutchinson had subsequently decided to purchase a premade clipping device which could be adapted to the machine instead of having defendant design the clipping aspect of the machine. In April 1977, Hutchinson recommended a Practo clipping machine to accomplish the clipping function. The Practo clipper was subsequently purchased by Hutchinson at his expense.

Later, in June 1977, a proposal drafted by defendant's attorney was submitted to plaintiff. The proposal, as set forth below, outlined the agreement of the parties and was attached to plaintiff's verified complaint:

> "We, E. W. Lancaster, Inc. agree to develop an automated machine that will take casings from a hopper, transfer to a pleating device, then to a crimping operation. The machine will be built to provide above functions at a rate of 1,500/Hr. to 5,000/Hr. under normal operating conditions.
>
> The machine will be developed with the approval and consent

of Hutchinson prior to any manufacturing of parts. Lancaster will keep Hutchinson fully informed of any new ideas or changes and Hutchinson will be available for approval or disapproval.

The design of this machine shall be the joint responsibility of Hutchinson and Lancaster. Hutchinson shall signify acceptance of the design and development of this machine on a monthly basis.

The machine will be built for $18.00 per hour plus 115% of material cost. All patent rights will be property of Hutchinson. Expected cost of this machine to be $35,000 to $50,000, to be invoiced bi-monthly, based on time and material expended.

Lancaster guarantees material and workmanship for the period of one year.

Expected delivery to be September 30, 1977 or sooner."

The proposal was never executed by plaintiff.

After defendant commenced work on the machine, Hutchinson made routine visits to defendant's plant to check on defendant's progress. In July 1978, Hutchinson informed Wezio and Lancaster that he did not consider the machine completed. Shortly thereafter, test runs on the machine were performed at one of plaintiff's customer's plants. Hutchinson testified that approximately 35 to 50% of the casings run during the test were found to be defective. However, on cross-examination, he stated that he had told Wezio that the test runs had been successful and that only three of the 500 casings which were retested experienced clip failure.

Additional tests on the pretying machine were run in May 1978 and August 1978. Wezio testified that after the tests performed in May, it was discovered that the clipping device was not functioning properly. He also testified that by August the machine ran satisfactorily. The quality of clip was equal to those originally produced by plaintiff, and all other functions worked properly. At that time, the machine could run at a rate of 1,500 to 5,000 casings per hour. Finally, Wezio testified that Hutchinson decided that heavier-gauge wire should be used. Problems with the clips arose after the heavier wire was used.

Eventually, defendant hired a consultant, Mr. Firth, to help Wezio and Lancaster better understand the nature of plaintiff's product and the industry in general. Firth observed and tested the machine in 1979 and early 1980. His observations revealed problems with feeding the clips into the clipper, uniformity of clips, and problems in the "pick-up" unit immediately ahead of the clipper. The last test was run

in January 1980. Firth testified that the machine did not operate satisfactorily. Although Firth could not identify the problem specifically, he stated that the problems with the clipper had masked other problems with the machine.

Plaintiff continued to pay defendant for his work on the machine through February 16, 1979. Plaintiff filed the instant action in the circuit court of Cook County on April 23, 1980.

Initially, plaintiff contends that the trial court's finding that the design of the pretying machine was the joint responsibility of the parties was erroneous. It argues further that defendant's obligation under the parties' agreement included sole responsibility for the design and production of the entire pretying machine. We disagree.

A reviewing court will not substitute its judgment for that of the trial court unless it is against the manifest weight of the evidence. (*Uptown Federal Savings & Loan Association v. Kotsiopoulos* (1982), 105 Ill. App. 3d 444, 434 N.E.2d 476.) A finding or judgment is not against the manifest weight of the evidence unless an opposite conclusion is clearly evidenced. *Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 426 N.E.2d 604.

■ Review of the evidence presented in the instant case reveals that the trial court's finding on the parties' design responsibilities under the contract was not against the manifest weight of the evidence. In reaching our conclusion, we cite our recent decision in *American National Bank & Trust Co. v. Erickson* (1983), 115 Ill. App. 3d 1026, 452 N.E.2d 3, for the proposition that admissions contained in a verified pleading are binding judicial admissions. An admission has been defined as a voluntary acknowledgement made by a party of the existence of the truth or certain facts which are inconsistent with his claim in an action. (Black's Law Dictionary 44 (5th ed. 1979).) Plaintiff incorporated the "proposal" quoted above into its verified complaint. Plaintiff relied on the proposal as evidence of the parties' agreement. The proposal specifically acknowledges that "the design of this machine shall be the joint responsibility of Hutchinson and Lancaster." Moreover, the evidence adduced at trial clearly supports defendant's theory that plaintiff was responsible for purchasing the clipping device which malfunctioned and masked other problems which ultimately contributed to defendant's delay in completing the machine.

■ Second, plaintiff contends that the trial court's finding that defendant had performed all conditions under the agreement was contrary to the manifest weight of the evidence. However, our review of the record supports the trial court's finding.

The proposal, which plaintiff attached to its complaint, provides

that defendant and plaintiff would design an automated machine that would pick up casings from a hopper, transfer them to a pleating device and crimp them. Testimony given by witnesses at trial indicates that the machine would also clip the casings. The clipping mechanism would be supplied by plaintiff. The finished machine would produce tied or clipped sausage casings at a rate of 1,500 to 5,000 casings per hour. The evidence presented at trial, concerning the machine's ability to meet these requirements, is contradictory. However, Wezio testified that by the end of 1978, the machine functioned properly and could run at a rate of 1,500 to 5,000 casings per hour. The only defects which were observed at this time related to the clipping device which was supplied by plaintiff.

It is well established that the trial judge is in a superior position to determine the credibility of witnesses whose testimony is conflicting. (*Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 426 N.E.2d 604.) There is ample evidence in the record to support the trial court's finding that defendant performed all of the conditions required under the agreement. Accordingly, we will not substitute our judgment for that of the court below. *Thornton v. Williams* (1980), 89 Ill. App. 3d 544, 412 N.E.2d 157.

Finally, we turn to the question of the amount of damages to which defendant is entitled. Plaintiff argues that the trial court's calculation of damages was erroneous and against the manifest weight of the evidence. We agree.

In its counterclaim, defendant alleged that under the terms of the parties' agreement, plaintiff owed defendant $17,977 in addition to the amount of monthly payments which defendant had already received, $46,577.10. After trial, judgment was entered in favor of defendant on its counterclaim in the amount of $16,787.50.

■ Plaintiff called an employee of defendant to testify under section 60 of the Civil Practice Act. The employee, who was in charge of keeping defendant's daily time records, testified that the charges billed to plaintiff for labor and material amounted to $59,028.37. As stated above, plaintiff already paid defendant $46,577.10. The difference between these two figures is the amount still owed to defendant, $12,451.27. The trial court's award of damages in the amount of $16,787.50 is not supported by the facts in the record and unjustly enriches defendant by $4,336.23. Where the appellate court is convinced that an award is excessive, the court may reverse outright or order a reduction. (*Rivenbark v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 346 N.E.2d 494.) Consequently, we find that defendant is entitled to damages in the amount of $12,451.27. In this regard, the trial

court's award is affirmed, as modified.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County, and modify the award of damages as set out above.

Judgment affirmed, as modified.

BUCKLEY, P.J., and CAMPBELL, J., concur.