(No. 89-CC-0632-)

AHMET T. ARGUDEN, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 10, 1993.*

JOSEPH V. RODDY, for Claimant.

SIEGAN, BARBAKOFF & ASSOC. (NORMAN JEDDELOH, of counsel), for Respondent.

## OPINION

FREDERICK, J.

The Claimant, Ahmet T. Arguden, filed his complaint in the Court of Claims on September 1, 1988. Claimant alleged that on September 29, 1986, he was the victim of a false arrest in regard to an alleged theft at the Chicago Circle Center Book Store on the University of Illinois Chicago Circle campus. In Count II of the complaint, the Claimant alleged a malicious prosecution claim against the Respondent for causing criminal charges to be lodged against Claimant.

The cause was tried by the Commissioner assigned to the case.

### The Facts

Claimant was a student and was also teaching at the

University of Illinois, Chicago campus, in the fall semester of 1986. Claimant had completed his Masters degree in 1984 and was working on his Ph.D. in geology. Claimant completed his Ph.D. in 1989.

At about noon on September 29, 1986, Claimant went into the University bookstore to purchase a pair of handball gloves. In the bookstore there was an open area immediately inside the electronic doors. Further inside, there was a charge desk and several cashiers. Past the other side of the charge desk and cashiers' stations was where the merchandise was located. The handball gloves were in the very back of the store. Claimant went to the back of the store and picked out a pair of handball gloves. Claimant testified the gloves were in disarray and he had to go through the pile to find a matching pair. Claimant then proceeded to the charge desk. Claimant testified there were lines of people at the charge desk. One such line extended into the merchandise section of the store and another line extended into the area between the counter and the entrance to the bookstore.

Claimant further testified that while he was waiting in line by the charge desk, he was approached by Steven Bradd, a security officer-employee of the bookstore. Claimant testified that Bradd held Claimant's right arm and led Claimant out of the line and downstairs to an office.

Claimant was brought into an office and informed that he was accused of stealing the handball gloves. Claimant was requested by Bradd to sign a form admitting that he had stolen the gloves. Claimant was advised that if he did sign the form the matter would be referred to the university discipline committee. He was further advised that if he did not sign the form, the university police would be called. Claimant refused to sign the form and police officers were called. Claimant was handcuffed,

led through the bookstore, through the Circle Center building, and through part of the campus to the police car. Claimant was then taken to the police station where he was charged with theft. He was detained until Dr. Rodolfo, a professor at the university, arrived and posted bond for Claimant. Claimant was charged with misdemeanor retail theft and appeared in court at least three times. At the last court appearance, the charges against him were stricken with leave to reinstate. The charge was never reinstated.

Claimant testified that the aggravation and trauma of the incident caused a delay in the completion of his Ph.D. dissertation of about one year.

The Claimant acknowledged that he was familiar with the University Bookstore and had been in the bookstore many times prior to the incident. Claimant knew that it was necessary to go to a charge desk to get a charge slip before charging goods. Claimant testified he waited in charge line A until his turn came. At that point, he asked the charge desk attendant for the price of the gloves. However before he had the opportunity to do anything else, according to the Claimant, Bradd approached him in the line, touched him on the arm, and told Claimant to come with him to the lower level of the bookstore and accused him of theft. Bradd was polite to Claimant.

The Claimant testified that at the first court appearance, his own lawyer asked for a continuance and that there was never a finding by a court of "not guilty" on the criminal charge. Claimant asserts that he suffered emotional upset due to this incident and that he was required to pay an attorney $500 to defend the criminal charge.

The Claimant prepared a statement describing the incident one day after the incident to assist him in accurately

remembering and providing testimony. Claimant says that the statement is inaccurate since it suggests that he was actually in charge line B at the time of the Bradd apprehension. The Claimant contends that the statement is inaccurate because he temporarily went to charge line B but then returned back to charge line A.

The Claimant never saw any counselor or medical provider as a result of this incident. Claimant is not aware of any damage to his reputation and does not claim any form of disability. Claimant does not know of any situation in which the university "published" any information about this incident to any person and he suffered no adverse action in his own department as a result of the incident.

Dr. Rodolfo, a geology professor at the University of Illinois at Chicago for over 20 years, testified that Claimant's reputation for truth and veracity was of the highest nature. Dr. Rodolfo also testified that he went with Claimant to the bookstore the next day to go over the incident with Claimant step by step. Dr. Rodolfo observed the racks of gloves but testified the racks of gloves were not in a state of disarray when he viewed them. Dr. Rodolfo was the Claimant's faculty advisor and knew Claimant well. Dr. Rodolfo considers himself to be a friend of Claimant's. He also asserted that the Claimant was delayed in the completion of his Ph.D. by one year as a result of his obsession with the incident.

Steven Bradd was a security guard at the University Bookstore on September 29, 1986. Bradd testified he observed the Claimant enter the bookstore and go to the handball glove rack. Bradd considered the handball glove area a "trouble spot" because it was in a secluded area where retail thefts occur more frequently. Bradd had previously inspected the whole store and made sure the

handball glove racks were neat. Bradd observed the Claimant remove a pair of gloves from a box, try them on, then throw the box onto the rack and walk away with the gloves folded up in his hand.

Bradd recovered the box and then followed the Claimant to the charge desk. Bradd positioned himself so that he did hear the Claimant ask the person behind the charge desk the price of the gloves. After the Claimant went to the charge desk, the handball gloves were balled up in Claimant's hand so that they could hardly be seen. Bradd testified that the Claimant looked around from time to time throughout the incident.

Bradd testified that after Claimant asked the price of the gloves, the Claimant looked to his left and right, walked by a cashier line and began walking towards the bookstore exit. At that point, Bradd apprehended the Claimant.

Bradd testified he identified himself as "bookstore security" and requested the Claimant to accompany him to discuss the incident. He took the Claimant to an office and accused him of committing retail theft. Bradd told the Claimant that he could either resolve this matter through the student disciplinary proceeding or Bradd would call the police. According to Bradd, the Claimant initially refused to sign the letter referring the matter to student discipline but later offered to sign it as the police were handcuffing him.

Bradd testified he acted to detain the Claimant solely because he believed the Claimant was committing retail theft.

On September 29, 1986, there was an electronic gate at the store. The gate would set off an alarm if goods not deactivated were carried through it. The price tag would

set off the alarm. Cashiers at the time of purchase deactivated the alarm. The price tag on the handball gloves was on the box. The gloves Claimant had were out of the box.

Michael Landeck, the store's general manager, testified that, when he came to the University Bookstore, he established a loss prevention program to minimize retail theft. Landeck wrote a training manual for that purpose and trained Steven Bradd in appropriate techniques for minimizing retail theft. He stated that it was consistent with the training manual and a good practice to apprehend and detain suspects in an area between the last point of purchase and the doorway to the exterior. He also stated that this was consistent with practice in the industry. Landeck also confirmed that the price tags on the products trigger the bookstore's electronic gate unless desensitized by bookstore cashiers using a procedure obvious to any customer at the bookstore.

It was Landeck's responsibility to keep track of court dates for the Claimant's case. He conceded that, after several appearances, the case was, in effect, dismissed for lack of prosecution because the witnesses from the University failed to attend.

## The Law

The Claimant seeks a finding of liability on the theory of false imprisonment and on a theory of malicious prosecution. False imprisonment consists of an unlawful restraint, against the will of an individual's personal liberty or freedom of locomotion. (*Dutton v. Roomac, Inc.* (1981), 100 Ill. App. 3d 116, 426 N.E.2d 604.) False arrest is one means of committing false imprisonment. (*Shemaitis v. Froemke* (1955), 6 Ill. App. 2d 323, 127 N.E.2d 648.) Claimant has the burden of proving by a preponderance of the evidence that the security officer imprisoned

him, that the security officer did not have probable cause to detain or arrest him, and that he suffered damages therefrom. *Ivancic v. Stole* (1961), 24 Ill. Ct. Cl. 81.

In *Dutton, supra*, the Court stated that "an arrest authorized by statute cannot be grounds for civil liability." Since security officer Bradd detained and arrested the Claimant pursuant to section 16A—5 of the Criminal Code (720 ILCS 5/16A—5), the detention and arrest herein cannot be grounds for false imprisonment. Section 16A—5 states:

"Any merchant who has reasonable grounds to believe that a person has committed retail theft may detain such person, on or off the premises of a retail mercantile establishment, in a reasonable manner for a reasonable length of time for all or any of the following purposes:

(a) To request identification.

(b) To verify such identification.

(c) To make a reasonable inquiry as to whether such person has in his possession unpurchased merchandise and, to make reasonable investigation of the ownership of such merchandise.

(d) To inform a peace officer of the detention of the person and surrender that person to the custody of a peace officer ° ° °."

A detention pursuant to the aforesaid statute does not constitute an unlawful arrest or unlawful detention and does not render the merchant liable to the person detained. (720 ILCS 5/16A—6.) Additionally, section 16A—4 of the Criminal Code states that

"If any person: (a) conceals upon his or her person or among his or her belongings, unpurchased merchandise displayed, held, stored or offered for sale in a retail mercantile establishment; and (b) removes that merchandise beyond the last known station for receiving payments for that merchandise in that retail establishment such person shall be presumed to have possessed, carried away, or transferred such merchandise with the intention of retaining it or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise."

To conceal merchandise means that, although there may be some notice of its presence, that merchandise is not visible through ordinary observation.

Security Officer Bradd testified that he had Claimant under constant surveillance from the time he entered the store until he was apprehended. Bradd observed the Claimant look around nervously. The Claimant also discarded the package back on the rack. The package had the price tag affixed which would trigger the security alarm unless desensitized by a cashier after the purchase. The gloves were balled up and barely visible in Claimant's hand while he carried them. Claimant passed the cashier and proceeded toward the doors. All of these actions would indicate to a reasonable merchant that a theft was occurring and that there was probable cause for the arrest. There was no evidence of malice shown on the part of Bradd. It appeared that Bradd acted politely and professionally. Claimant even testified that Bradd did not wish to cause him harm. Bradd's testimony is credible and reasonable.

A thorough review of the contradictory testimony of Claimant and Bradd leaves the Court with the finding that all of the contradictions in their testimony can be attributed to the point of view of the person giving that testimony except for the matter of the place of arrest. One could view the Claimant as one who becomes confused when he picks up a pair of gloves without a price tag. With the crowded conditions and the different lines, he goes beyond the correct line and has no real intent to steal. However, in view of the security officer, the furtive looks, the discarding of the box, the balling up of the gloves, and the going beyond the last point of payment reasonably add up to probable cause for an arrest for retail theft.

The point of the initial contact between Claimant and Bradd is the most troublesome part of the case. Claimant argues he was in line to pay. Bradd testified Claimant was past the last point of payment and heading

for the doors. We find that the area where Bradd testified he encountered Claimant was an appropriate area to effectuate a shoplifter under the law. The issue becomes one of credibility. Bradd was unimpeached. Claimant appeared very credible except on one point. Claimant testified the gloves were in a state of disarray. Bradd had recently checked the glove area and he testified the gloves were neatly racked and boxed. Being neat helped Bradd as he watched for shoplifters. Professor Rodolfo viewed the glove area the next day. The gloves were not in a state of disarray. Although the gloves were viewed on the next day by Professor Rodolfo, this is important evidence which leads the Court to find the testimony of Bradd more credible than the testimony of Claimant. We therefore find that Claimant has failed to prove by a preponderance of the evidence that he was falsely arrested. Probable cause existed for the arrest.

For the Claimant to prevail in his malicious prosecution claim he must prove by a preponderance of the evidence that a criminal proceeding was commenced by a defendant, that the proceeding terminated in favor of plaintiff, that probable cause was lacking, that the defendant acted with malice, and that the plaintiff suffered special damages. *Joiner v. Benton* (1980), 82 Ill. 2d 40, 411 N.E.2d 229.

As we have previously found that probable cause existed for this arrest and because we find that Claimant failed to prove any malice on the part of Respondent, this claim must also fail. The burden of proof is upon Claimant to establish that Respondent acted with malice and had no probable cause to institute the theft proceeding. Even if Claimant and Bradd's testimony were equally credible (and we have found Bradd's testimony to be more credible), Claimant would not prevail. (*Ivancic v.*

*State* (1961), 24 Ill. Ct. Cl. 81.) We, therefore, find that Claimant has failed to bear his burden of proving the elements of his case and this claim is denied.