151 F.3d 1032
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael DRIVER, Plaintiff-Appellant,
v.
Warner B. BIRTS, et al. Defendants-Appellees.
 No. 98-1142.
 United States Court of Appeals, Seventh Circuit.
 Argued July 8, 1998.
Decided July 31, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 96 CV 3125 George M. Marovich, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOEL M. FLAUM, Hon. ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Michael Driver filed a suit under 42 U.S.C. § 1983 alleging that he had been falsely arrested and maliciously prosecuted after he was acquitted of stealing items from the school at which he was a teacher's aide. The district court found that school officials had probable cause to procure Driver's arrest. While school officials did not perform a thorough investigation in this case, their minimal investigation, combined with Driver's conduct when questioned about the missing items, gave the school officials probable cause to believe that he had stolen the equipment, and we therefore affirm the district court.
 
 I. Facts
 
 2
 Michael Driver was a teacher's aide in the radio and television studio at Englewood Technical Preparatory Academy, a public school on the South Side of Chicago, from 1989 until 1995. At the time of the events involved in this suit, Warner Birts was the principal at Englewood, and Nehemiah Russell was an assistant principal at the school. Russell was in charge of security at the school during the 1994-95 school year. His security duties primarily related to maintaining order among the student body. Russell was not familiar with the school's inventory procedures, and was not responsible for the security of the school's studio.
 
 
 3
 The school maintained a written authorization procedure for cases when school property would be removed from Englewood. Driver had been given authority to take various electronic items to outside vendors for repairs, and to use equipment in connection with school work (e.g., videotaping football games and student projects). Driver did not have authority to take items home without permission.
 
 
 4
 On May 5, 1995, two students told Russell that Driver had some of Englewood's equipment at his house. Russell informed Driver of the students' accusation later that day, and learned that Driver had placed orders for equipment with Helix Camera and Radio Shack in March 1995. Driver admitted that he had school equipment at his home and told Russell that he would return the equipment. Neither Russell nor Driver identified any "equipment" in particular during their conversation.
 
 
 5
 The following Monday, Driver returned seven boxes of equipment to Russell. Russell compared the equipment in the boxes to the equipment listed in the school's file copies of the Helix and Radio Shack invoices, and determined that some items were still missing. Russell confronted Driver again later that day and asked him to return the rest of the equipment. Driver became angry, insisting in a profanity-laced reply that he did not have any other equipment at home. When Russell insisted that Driver return the still-missing equipment, Driver's response was to tell Russell to "bill me for it ." On May 10, Russell told Officer Crawley, a Chicago Police officer assigned to Englewood, about the missing equipment.
 
 
 6
 On May 11, Russell sent a letter to Driver indicating what items were still missing. Among the items on that list were a computer hard disk drive that had not been on either invoice, and printer paper that was listed as backordered and not delivered on the invoice. Driver and Russell had a conversation later that day. Driver says that he tried to show Russell that some of the items allegedly missing were in fact in the studio, but Russell refused to listen. Driver's response to this was to tell Russell again to "bill me for it and I'll see you in court." On May 26, 1995, Chicago Police officers arrested Driver at the school after Russell signed a criminal complaint against Driver. Driver had a bench trial on the theft charge on January 8, 1996. At the close of the state's case, the trial judge directed a verdict for Driver.
 
 
 7
 Driver filed this action on May 26, 1996. His complaint alleged unlawful arrest and malicious prosecution under both Illinois law and 42 U.S.C. § 1983. On December 15, 1997, the district court granted summary judgment to the defendants on all counts, on grounds that the defendants had probable cause to arrest Driver and that Driver had not shown that the defendants acted maliciously towards him. Driver filed a timely notice of appeal on January 14, 1998.
 
 II. Discussion
 
 8
 This court reviews a grant of summary judgment de novo. Washington v. Summerville, 127 F.3d 552, 557 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1515, 140 L.Ed.2d 668 (1998). To prevail on all of his claims, Driver must demonstrate that there was no probable cause to arrest him.[1] See Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir .1996), cert. denied, 519 U.S. 1113, 117 S.Ct. 952, 136 L.Ed.2d 840 (1997) (unlawful arrest); Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir.1996) (malicious prosecution). Whether there is probable cause to arrest is a fact-bound inquiry usually left to a jury. See Booker, 94 F.3d at 1057. However, summary judgment is appropriate on the issue of probable cause when the material facts are not in dispute, and only one conclusion may be drawn from the facts. Id; Sheik-Abdi v. McClellan, 37 F.3d 1240, 1246 (7th Cir.1994). Russell and Birts had probable cause to arrest Driver if "at the moment the arrest was made ... the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that Driver had stolen school equipment. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Tangwall v. Stuckey, 135 F.3d 510, 518 (7th Cir.1998). The issue is not whether Russell and Birts were correct, but rather, whether a reasonable person in their shoes would believe that Driver stole the missing equipment. Tangwall, 135 F.3d at 519. When evaluating whether Russell and Birts were motivated by probable cause, the panel must look at the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); United States v. Rucker, 138 F.3d 697, 700 (7th Cir.1998).
 
 
 9
 At the time of the arrest, Russell knew that Driver had picked up equipment without authorization, and had brought school equipment to his house without authorization. Driver admitted to Russell that he had brought school equipment home, and when Russell confronted him about equipment still missing after Driver returned boxes of equipment to the school, Driver responded with a string of profanities, and told Russell to bill him for the missing equipment. There was some sort of investigation in the school to determine what was missing, as Driver indicated that he saw Russell, Williams and a teacher's aide taking inventory in the school's TV studio. A reasonable person, armed with these facts, would have probable cause to believe that Driver had stolen some equipment from the school.
 
 
 10
 Driver puts forth a bevy of facts in an attempt to show that Russell acted unreasonably. Driver's complaint boils down to the charge that Russell did not conduct a proper investigation prior to filing criminal charges against Driver. In retrospect, Russell's handling of the situation appears sloppy. But Russell was not under any obligation to conduct further investigation once he had a reasonable basis to believe that Driver had stolen school equipment. See Eversole v. Steele, 59 F.3d 710, 717 (7th Cir.1995); Garcia v. City of Chicago, 24 F.3d 966, 970 (7th Cir.1994). Driver did not help his cause with his explosive reactions to Russell when Russell confronted him about the missing equipment. Driver twice told Russell to bill him for the missing equipment. In these circumstances, we cannot say that Russell's conduct was unreasonable.
 
 
 11
 Driver also argues that there is a question of material fact on the issue of whether equipment was actually missing, but that argument misapprehends the nature of the probable cause inquiry. The issue is not whether Russell was right when he determined that the items were missing, only whether a reasonable person in Russell's shoes would have believed that the items were missing. See Tangwall, 135 F.3d at 519; Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 439 (7th Cir.1986) ("it's what the police know, not whether they know the truth, that matters"). And while many of the items Russell believed were missing might be difficult to identify in the studio (e.g., batteries), the Portable Video Printer and scanner on the Radio Shack invoice would appear to be items that would have been located had they been in the studio.
 
 
 12
 A finding of probable cause defeats all of Driver's claims, and the district court's order is therefore
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Driver has not sued the officers who arrested him in his unlawful arrest claims. Rather, he has sued Driver and Birts for causing or procuring his arrest. Under Illinois law, an arrest caused or procured by a private person is treated the same as an arrest by that person. See Vincent v. Williams, 279 Ill.App.3d 1, 216 Ill.Dec. 13, 664 N.E.2d 650, 654 (Ill.App.Ct.1996). The private person is liable for false arrest only if the arresting officers relied solely on the statements of the private person when making the arrest. See Dutton v. Roo-Mac, Inc., 100 Ill.App.3d 116, 55 Ill.Dec. 458, 426 N.E.2d 604, 607 (Ill.App.Ct.1981)